IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AGRI-SALES ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:10-cv-00961 |
| | ) | |
| RICHARD H. MCCONNELL and | ) | MAGISTRATE JUDGE BROWN |
| MCCONNELL HALL | ) | |
| MANUFACTURING, LLC, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| MCCONNELL HALL | ) |
| MANUFACTURING, LLC, | ) |
| | ) |
| Counter- and Third-Party | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AGRI-SALES ASSOCIATES, INC., | ) |
| | ) |
| Counter-Defendant, | ) |
| | ) |
| AND | ) |
| | ) |
| CURTIS 1000 INC., SPECTRUM | ) |
| GLOBAL IMAGING, INC., | ) |
| and DOUGLAS E. FORD, | ) |
| | ) |
| Third-Party Defendants | ) |

## **MEMORANDUM AND ORDER**

Presently pending is Third-Party Defendant Curtis 1000 Inc.'s ("Curtis 1000") Motion to

Dismiss Count Two in the Third Party Complaint brought by Third-Party Plaintiff McConnell

Hall Manufacturing, LLC ("MHM"). (Docket Entry 39). Curtis 1000 has filed a Memorandum in

support of this Motion. (Docket Entry 40). MHM has filed a Response. (Docket Entry 49). For the reasons set forth below, Curtis 1000's Motion to Dismiss is **DENIED**.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Agri-Sales Associates ("ASA") filed its original Complaint against Richard H. McConnell ("McConnell") and MHM (together, "Defendants") on October 13, 2010. (Docket Entry 1). ASA filed an Amended Complaint as a matter of course on October 27, 2010, alleging breach of contract, fraud, deceit, fraudulent misrepresentation, and fraudulent misappropriation of funds regarding a failed business venture. (Docket Entry 11). Plaintiff's fraud claim was dismissed on Defendants' motion on March 17, 2011. (Docket Entry 28). On March 30, 2011, Defendants answered the Amended Complaint and also filed a Counterclaim against ASA and a Third-Party Complaint against Curtis 1000, Douglas E. Ford ("Ford"), and Spectrum Global Imaging, Inc. ("Spectrum") (Docket Entry 29). Curtis 1000 filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), alleging that Count Two in MHM's Third-Party Complaint is barred by the Statute of Frauds and the relevant statute of limitations. (Docket Entry 39).

## II. FACTUAL BACKGROUND[1]

On October 13, 2004, ASA and MHM executed a Marketing Agency Agreement ("Agreement") regarding a product known as a "Personalized Photo Tapestry." (Pl.'s Ex. A at 2, 5). As part of the Agreement, MHM agreed to pay ASA a ten percent commission in exchange for ASA retaining the exclusive right to market the product. (*Id.* at 2). The photo tapestries were

---

[1]Facts are taken as true from ASA's Amended Complaint and MHM's Third-Party Complaint. (Docket Entries 11, 29).

sold by MHM but produced by Spectrum, which is owned and operated by Ford. (Am. Compl. at

¶ 8, Third-Party Compl. at ¶ 3). MHM allegedly had a valid and binding agreement with

Spectrum, under which MHM would pay Spectrum forty-five percent of the purchase price in

exchange for Spectrum producing and preparing the tapestries. (Third-Party Compl. at ¶ 47).

Curtis 1000 was retained by MHM to print and prepare "product kits" for the photo

tapestry. (*Id.* at ¶ 10). Each product kit contained instructions on how purchasers could obtain

photo kits, a form requesting the purchaser's contact information, and an envelope.[2] (*Id.* at ¶ 11).

After completing the form and enclosing it in the envelope along with a photo and receipt,

customers were to mail the envelope to MHM, who would then forward it to Spectrum to

produce the final product. (*Id.* at ¶ 12).

The venture was profitable through early 2006, with ASA selling over five hundred

thousand dollars' worth of kits to distributors and other customers. (Am. Compl. ¶ 12). However,

MHM closed its doors in 2006[3] after the business stopped being profitable.[4] (*Id.*, Third-Party

Compl. at ¶ 34). Through a forwarding address, MHM continued to forward envelopes

containing order forms and photos to Spectrum for production until they stopped coming in

entirely. (Third-Party Compl. at ¶¶ 34-36).

---

[2]MHM alleges that the envelope was supposed to be a "plain white envelope" addressed
to MHM. (Third Party Compl. at ¶ 11).

[3]No specific date is given in either ASA's Amended Complaint or MHM's Third-Party
Complaint.

[4]ASA and MHM, predictably, have different versions of events as to why the business
venture failed. For the purposes of this Motion, however, the Court takes as true those facts
alleged by MHM in its Third-Party Complaint, especially as they relate to Curtis 1000.

ASA and Curtis 1000 represented to MHM that Curtis 1000 was "well-suited" to prepare the photo tapestry kits and would do so properly. (*Id.* at ¶ 13). Curtis 1000 promised MHM that it would prepare the kits to MHM's specifications, which mandated the inclusion of a plain white envelope in the kits for customers to mail MHM their photos and order forms. (*Id.* at ¶ 14). MHM contracted with Curtis 1000 to print and prepare the product kits based on this representation.[5] (*Id.* at ¶ 15). Curtis 1000 allegedly prepared "a significant number of the product kits," which ASA sold to various distributors and stores, before the business venture shut down. (*Id.* at ¶ 18). MHM paid Curtis 1000 approximately $14,500 from the sales proceeds of the tapestries. (*Id.* at ¶ 23).

Sometime in 2006, however, the venture stopped being profitable for MHM when it realized that Curtis 1000 was packaging the kits with UPS overnight shipping envelopes instead of the plain white envelopes that it allegedly agreed to supply. (*Id.* at ¶ 25). Since the overnight shipping was billed to MHM's UPS account, the additional charges cut into the profit margin on each tapestry to the point where they "eliminated any hope of profitability." (*Id.* at ¶ 27). When MHM contacted Curtis 1000 and ASA to correct the error, Curtis 1000 refused to repackage the kits and demanded more money to remedy to packaging problem. (*Id.* at ¶ 28). Given the lack of proceeds and "spiraling UPS charges," MHM closed its office in Charleston, South Carolina in 2006. (*Id.* at ¶ 34).

---

[5]MHM's Third-Party Complaint merely states that it "contracted" with Curtis 1000. In MHM's Response to the Motion to Dismiss, it claims that writings exist confirming the existence of this contract. (Resp. to Mot. to Dismiss at 9).

## III. ANALYSIS

MHM alleges that Curtis 1000 breached their contract by failing to include the plain white envelope and refusing to repackage the product kits. (*Id.* at ¶ 44). Curtis 1000 has filed a Motion to Dismiss under FRCP 12(b)(6) on the grounds that MHM's claims implicate Article 2 of the Tennessee Uniform Commercial Code and, as such, are barred by its Statute of Frauds and Statute of Limitations. (Docket Entry 40).

Per the terms of the Marketing Agency Agreement, the parties have agreed that Tennessee law governs this dispute. (Pl.'s Ex. A at 2).

A.    Standard of Review on Motion to Dismiss

When evaluating a defendant's motion to dismiss under FRCP 12(b)(6), a district court must view the complaint in the light most favorable to the plaintiff and take all well-pleaded factual allegations as true, as the moving party bears the burden of proving that no claim exists. *Erickson v. Pardus*, 550 U.S. 89, 89 (2007). FRCP 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The district court need not treat as true "bare assertions or legal conclusions" and must evaluate the remaining factual allegations to determine if they are sufficient to "raise the right to relief above the speculative level." *Id.* Only claims that cross the line from possibility to plausibility are sufficient to state a claim. *Id.* When the non-conclusory facts suggest two possible conclusions, one of which is alleged by the complaint but the other of which is more

plausible, a court may dismiss the complaint for failing to cross the plausibility line. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951-52 (2009).

B.    MHM's Claims Implicate Article 2 of the Tennessee Uniform Commercial Code

Curtis 1000 contends that, since the photo tapestry venture was a transaction in goods, Article 2 of the Tennessee Uniform Commercial Code ("UCC") and its relevant statute of frauds and statute of limitations should govern this action. (Docket Entry 40). The Tennessee UCC applies to "transactions in goods." TENN. CODE ANN. § 47-2-102 (West 2011). "Goods" means all things (including specifically manufactured goods) which are movable at the time of identification to the contract for sale. § 47-2-105(1). Goods which are not both existing and identified are "future goods"; a purported sale of future goods or of any interest therein operates as a contract to sell. § 47-2-105(2).

The Tennessee Supreme Court applies the "predominant factor" test in determining whether mixed transactions are "transactions in goods" under the UCC. *Hudson v. Town and Country True Value Hardware, Inc.*, 666 S.W.2d 51, 51 (Tenn. 1984). The test views the "transaction as a whole": if the predominant assets to be transferred are goods, the UCC governs, but if the predominant assets are non-goods, the UCC has no application. *Id.* at 52. A view of the reasonable "totality of the circumstances" should control the characterization of the contract for sale. *Id.* at 53 (*citing DeFilippo v. Ford Motor Co.*, 516 F.2d 1313 (3d Cir. 1975)).

Courts have taken varying approaches in determining whether goods or services constitute the "predominant factor" in a transaction. The value of the goods installed as compared to the value of the services performed may determine which is the dominant factor. *GenTech Const., LLC v. Natare Corp.*, No. 1:07-cv-192, 2011 WL 1257943, at *21 (E.D. Tenn.

March 31, 2011). A contract to install a roof has even been viewed as falling under the UCC on the grounds that the predominant factor in the contract is the material to be used in performing the work. *Grundy Cnty. v. Harrison*, No. 88-324-II, 1989 WL 54906, at *3 (Tenn. Ct. App. May 24, 1989). Often a multi-factor approach may best determine the predominant factor, examining the language of the contract, the nature of the supplier's business, the reason the parties entered into the contract, and the respective amounts charged under the contract for goods and services. *Pass v. Shelby Aviation, Inc.*, No. W1999-00018-COA-R9-CV, 2000 WL 388775, at *4 (Tenn. Ct. App. April 13, 2000).

Taking the factual allegations as true from the pleadings, it is clear that both the transaction between ASA and MHM and that between MHM and Curtis 1000 implicate the UCC as "transactions in goods." The parties entered into these contracts for the purpose of selling a future, specifically manufactured good – namely, a personalized photo tapestry to be produced by Spectrum. § 47-2-105; *Pass*, 2000 WL 388775 at *4. Even the alleged contract between MHM and Curtis 1000 involved the preparation of product kits – goods – which ASA sold to various distributors. It is unclear from the pleadings how much of the $14,500 that MHM paid to Curtis 1000 was distributed between "goods and services" – i.e., the labor put into making the product kits as compared to the value of the kits themselves. *Pass*, 2000 WL 388775 at *4. However, at this stage of the litigation, it appears quite clear that the "dominant factor" in this entire venture is the production and sale of photo tapestries and product kits. *Hudson*, 666 S.W.2d at 51. Therefore, Article 2 of the Tennessee UCC governs this action.

C.      MHM's Claims Are Not Barred by the UCC's Statute of Frauds

Curtis 1000 argues that its alleged contract with MHM is unenforceable under the Statute of Frauds because there is no evidence of any writings signed by the parties to the contract. (Mot. to Dismiss at 8-9). Under the Tennessee UCC, a contract for the sale of goods for the price of five hundred dollars or more is not enforceable unless a writing or record exists sufficient to indicate that a contract for sale has been made and signed by the parties. § 47-2-201(1). However, contracts which are otherwise enforceable need not comply with this requirement if "the goods are specifically manufactured for the buyer . . . and the seller . . . has made either a substantial beginning of their manufacture or commitments for their procurement." § 47-2-201(3)(a). Furthermore, a contract need not comply with the writing requirement if "payments ha[ve] been made and accepted" on the contract. § 47-2-201(3)(c).

The purpose of the UCC is to prevent enforcement of oral contracts that have not been performed, do not exist, or do not possess reliable supporting evidence – a writing. *See Gen. Dynamics Corp. v. United States*, 131 S. Ct. 1900, 1908 (2011). However, a contract must be enforced if there has been partial performance on it, since performance on a contract is itself evidence of the existence of said contract. *See Buice v. Scruggs Equip. Co.*, 194 Tenn. 129, 136 (1952). Partial payment on an oral contract may also entitle one party to enforcement to the extent of the payment made. *Anthony v. Tidwell*, 560 S.W.2d 908, 910 (Tenn. 1977).

Taking the factual allegations as true from MHM's Third-Party Complaint, it is clear that Curtis 1000 performed on whatever contract, oral or written, that it might have had with MHM. Clearly, Curtis 1000 could not have provided the wrong envelopes – UPS overnight shipping envelopes instead of plain white envelopes – unless it had performed at least a portion of its

contract. MHM alleges that Curtis 1000 "prepared a significant number of the product kits" and that it paid Curtis 1000 $14,500 for its work. (Third-Party Compl. ¶ 18, 23). Whether Curtis 1000 now thinks that there was no contract and no performance may be a matter for summary judgment, but not on motion to dismiss where MHM's factual allegations are given full credibility.

Notwithstanding Curtis 1000's performance on the contract and receipt of payments, MHM's complaint and response suggest that writings may have existed to confirm the existence of this contract. A complaint is subject to dismissal under Rule 12(b)(6) when an affirmative defense *on the face* of the pleading will bar any remedy. *See Jones v. Bock*, 549 U.S. 199, 199 (2007) (emphasis added). MHM's Third-Party Complaint merely states that it "contracted" with Curtis 1000 to print and prepare the product kits and that Curtis represented to MHM that it would correctly prepare the tapestry kits. (Third-Party Compl. at ¶ 15). On its face, this does not suggest either a written or an oral contract, and so the motion to dismiss based on the lack of a writing must also be denied on this basis alone. Discovery will surely flesh out the details of this alleged "contracting."

D.     MHM's Claims Are Not Barred by the UCC Statute of Limitations

Under the Tennessee UCC, an action for breach of contract must be commenced within four years after the cause of action has accrued. § 47-2-725(1). Curtis 1000 claims that MHM's Third-Party Complaint, filed on March 30, 2011, falls outside this four-year window and should therefore be barred. (Mem. in Supp. of Mot. to Dismiss at 9). Curtis 1000 misstates the law. A counterclaim or third-party complaint is not barred by the statute of limitations if it was not barred at the time the claims asserted *in the complaint* were interposed. § 47-2-725(5) (emphasis

added). Therefore, the relevant inquiry is the elapsed time between MHM's alleged breach of its contract with ASA and the time ASA filed its initial complaint.

ASA's Amended Complaint states that MHM closed its doors "in 2006," abandoning its responsibilities to fulfill photo tapestry orders for which ASA had already paid. (Am. Compl. at ¶ 12). No specific date is given. ASA filed its original complaint on October 13, 2010. (Docket Entry 1). On a motion to dismiss, the bar of the statute of limitations must clearly appear from the face of the complaint. *See Stiles v. Porter Paint Co.*, 75 F.R.D. 617, 618 (E.D. Tenn. 1976). If any issues of fact are involved, the motion will be denied. *Id.* On the face of the complaint, MHM could have conceivably closed its doors anytime between October 14, 2006 and December 31, 2006, which would means ASA's complaint is not barred by the statute of limitations. While discovery may prove otherwise, the complaint itself does not bar MHM's claims under the statute of limitations.        Again, discovery may well establish a date outside the four-year statute of limitations, in which case all claims may be subject to dismissal.

## IV. CONCLUSION

For the reasons stated above, Third-Party Defendant Curtis 1000's Motion to Dismiss (Docket Entry 39) is **DENIED**.

It is so **ORDERED**.


ENTERED this 5th day of July, 2011.


/S/ Joe B Brown
Joe B. Brown
United States Magistrate Judge

10